**VENABLE LLP**
Shannon E. Beamer (SBN 331289)
Email: SEBeamer@Venable.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

**VENABLE LLP**
Sarah L. Scott (*Pro Hac Vice Pending*)
Email: SLScott@Venable.com
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 528-4630
Facsimile: (410) 244-7742

*Attorneys for Defendant*
Experian Information Solutions, Inc.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JAMES D. ORR,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.

Defendant.

Case No. 8:26-cv-01870-DOC-JDE

Hon. David O. Carter
Courtroom 10A

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**

Date: December 7, 2026
Time: 8:30 A.M.
Courtroom: 10A

Action Filed: July 13, 2026
Trial Date: None Set

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

Defendant Experian Information Solutions, Inc. ("Experian"), through its attorneys, respectfully replies in support of its Motion to Compel Arbitration and to Stay Proceedings, stating:

## I. Introduction

Experian and Plaintiff James D. Orr ("Plaintiff") agree on many issues. Both Experian and Plaintiff agree that the Court determines whether the parties entered into a contract. Dkt. 52, Motion to Compel Arbit., III.A, B; Dkt. 54, Pl.'s Opp., II. After the Court decides that a contract has been formed, the parties agree that the Court must then "enforce a valid delegation." Dkt. 54, II, p. 13; Dkt. 52, III.D. They agree on the standards that must be met for contract formation in these circumstances. Dkt. 52, III.B; Dkt. 54, III.C. They agree that a court in the Central District of California found there to be a valid Arbitration Agreement between Experian and a plaintiff under similar circumstances. Dkt. 54, III.C; Dkt. 52, III.A, B; *Bryant v. JPMorgan Chase Bank, N.A.*, 763 F. Supp. 3d 946, 949-51 (C.D. Cal. 2025).

Nor does Plaintiff deny having a CreditWorks account; he acknowledges the May 7, 2024, enrollment reflected in Experian's records and concedes that his lack of recollection of the registration screen "does not, standing alone, establish a genuine factual dispute." Dkt. 54, I, III.A. Plaintiff's Opposition, therefore, rises or falls on Plaintiff's argument that the enrollment display Experian submitted did not provide legally sufficient notice. *Id.*, III.A-B. That argument fails. Experian has demonstrated the existence of a valid agreement through the Declaration of Dan Smith, the printout of the relevant webform, and a copy of the Terms of Use Agreement in effect at the time Plaintiff signed up for CreditWorks, and courts have repeatedly found the same CreditWorks display legally sufficient. *See, e.g.*, *Bryant*, 763 F. Supp. 3d at 949-51; *Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839, 845 (N.D. Cal. 2024); *Rangel v. Experian Info. Sols., Inc.*, 749 F. Supp. 3d 1067, 1073-74 (E.D. Cal. 2024). The Court should therefore grant Experian's Motion to

Compel Arbitration and to Stay the Proceedings.

## II. Experian Provided Reasonably Conspicuous Notice of Its Contract Terms and Informed Plaintiff That Clicking "Create Your Account" Would Constitute Assent to These Terms

Experian and Plaintiff agree that a website needs to provide "reasonably conspicuous notice" of the contract terms and that the consumer needs to take some action, "such as clicking a button or checking a box," that demonstrates their assent to the terms, to create a valid agreement to arbitrate. Dkt. 52, III.B; Dkt. 54, III.C; *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024). And the parties agree that clicking something like a "Place Order" button, where the user is affirmatively told that clicking the button meant that the user accepted and agreed to the contractual terms, creates a valid contract. Dkt. 52, III.B; Dkt. 54, III.C; *see Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1159 (9th Cir. 2025) (noting that the Ninth Circuit, and others, have "repeatedly found webpages" to have formed valid contracts with users where the website included language informing a user that clicking a button meant that the user agreed to the site's terms of use). Finally, the parties agree that cases like *Bryant* "substantially favor Experian on comparable records." Dkt. 54, III.C.

In *Bryant*, the court found that Experian had provided "sufficient proof to establish the existence of an agreement to arbitrate" because Experian provided "a printout of the webform active at the time plaintiff allegedly completed it, showing a clickable link to the Terms of Use Agreement," "provided a copy of the Terms of Use Agreement in effect at that time, including the relevant arbitration provisions," and the Declaration of the Director of Product Operations at Experian, who provided statements based on his own personal knowledge about the circumstances related to the plaintiff's enrollment in CreditWorks. *Bryant*, 763 F. Supp. 3d at 949-51. So, too, here. Dkt. 52-1, Smith Decl., Exs. 1-2. Plaintiff enrolled in CreditWorks on May 7, 2024, and could not have enrolled without navigating to the enrollment page,

which states: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy," with "Terms of Use Agreement" set off in blue as a hyperlink. Below that disclosure, the page contains a short FCRA authorization for Experian to obtain Plaintiff's credit report and score on a recurring basis, followed by the "Create Your Account" button. Dkt. 52-1, Smith Decl., Ex. 1.

Other California federal district courts agree with the *Bryant* court that Experian's CreditWorks sign-up screen "effectively notified [users] of the existence of the Terms of Use and advised that creation of an account constituted acceptance of those terms." *Driskill*, 753 F. Supp. 3d at 845; *Rangel*, 749 F. Supp. 3d at 1073-74; *Pushmataha v. Experian Info. Sols., Inc.*, No. 2:25-cv-00034-SPG-BFM, 2026 WL 1020529, *5 (C.D. Cal. Feb. 23, 2026); *Hirsch v. Credit9, LLC*, No. 5:25-cv-00677-AH (MARx), 2025 WL 3155936, *1, 5-7 (C.D. Cal. Oct. 2, 2025); *Miles v. Bank of America, N.A.*, No. 5:26-cv-04216-KK(SPx), 2026 WL 331800, *1 (C.D. Cal. Nov. 2, 2026); *Acorin v. Experian Info. Sols., Inc.*, No. 24-cv-00036-AJB-BLM, 2024 WL 5011950, *6 (S.D. Cal. Dec. 6, 2024); *see also Scribner v. Trans Union LLC*, 738 F. Supp.3d 1301, 1308 (E.D. Cal. 2024); *Davis v. Experian Info. Sols., Inc.*, No. 25-cv-04819-HSG, 2025 WL 2998157, *2 (N.D. Cal. Oct. 24, 2025).

Plaintiff concedes that his lack of recollection does not create a genuine factual dispute as to the existence of a valid Arbitration Agreement. Dkt. 54, III.A. Moreover, both plaintiffs in *Bryant* and *Driskill* claimed there was a factual dispute, and the district courts disagreed. *Bryant*, 763 F. Supp. 3d at 949-50; *Driskill*, 753 F. Supp. 3d at 845-46; *see also Hirsch*, 2025 WL 3155936, at *6-7.

In *Driskill*, the court walked through Experian's website in detail, as well as the steps the user would take to create an account: like here, the phrase "Terms of Use agreement" was a hyperlink set off in blue text, which would have provided the user the full text of the agreement had it been clicked. *Driskill*, 753 F. Supp. 3d at 841. Like here, the user could view the agreement before clicking the "Create Your

Account" button, a large purple button below the link to the Terms of Use and the disclosure stating: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." *Id.* at 841-42. Like here, the webform, the disclosure, and the "Create Your Account" button appeared on a single webpage. *Id.* at 842. The court found that the CreditWorks sign-up screen "gave conspicuous notice of the Terms of Use" and that the plaintiff unambiguously assented to the Terms of Use because the website makes the "assent-manifesting actions…clear" and clicking the "Create Your Account" button completes the assent. *Id.* at 845. The *Rangel* court agreed, as did the *Bryant* court. 749 F. Supp. 3d at 1073-74; 763 F. Supp. 3d at 950. The brief FCRA authorization that appears between the disclosure and the button does not change the analysis. It is part of the same single enrollment transaction, is itself a consent the user gives by clicking the same button, and does not obscure or compete with the "By clicking 'Create Your Account'" disclosure, which remains the statement expressly tying the button to acceptance of the Terms of Use. Dkt. 52-1, Ex. 1. It also appears on the *Driskill* website, which was found to provide reasonable notice and assent. *Driskill*, 753 F. Supp. 3d at 842; *see also Acorin*, 2024 WL 5011950, at *2.

The "Ninth Circuit standard" that Plaintiff requests be applied has, thus, already been applied. Under *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022), a website must provide a disclosure that explicitly states "the legal significance of the action [a user] must take to enter into a contractual agreement." The disclosure Experian provided here does exactly that. Dkt. 52-1, ¶ 7, Ex. 1; *Driskill*, 753 F. Supp. 3d at 845 (quoting *Berman*); *Rangel*, 749 F. Supp. 3d at 1074 (citing *Berman*); *Bryant*, 763 F. Supp. 3d at 950. *Chabolla* requires that the Court consider the website as a whole to determine whether it provided "reasonably conspicuous notice" of its Terms of Use and whether a "reasonably prudent internet user" would "unambiguously manifest" assent by, e.g., clicking a

button. *Chabolla*, 129 F.4th at 1159-60. Experian has shown that its sign-up page does both: it is one page, a single transaction, and a notice of agreement placed above the button completing enrollment that tells the user that clicking the button means the user assents to the Terms of Use. Dkt. 52-1, ¶¶ 7-10, Exs. 1-2. The Fourth Circuit found reasonable notice and assent based on similar evidence in similar circumstances. *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 208-09 (4th Cir. 2025). So, too, did the Eleventh Circuit. *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1348 (11th Cir. 2025); *see also Stone v. Equifax Info. Servs., LLC*, 826 F. Supp. 3d 1273, 1280 (D. Nev. 2026) (citing *Chabolla* and finding Experian's website provided sufficient notice); *Hirsch*, 2025 WL 3155936 at *5 n.9. Plaintiff cites no case finding this interface, or a comparable one, inadequate, and offers no evidence that it was. Since Plaintiff has not created a genuine issue of material fact as to the agreement's existence, the Court should decide as a matter of law that there is a valid Arbitration Agreement. *Bryant*, 763 F. Supp. 3d at 950.

Moreover, Plaintiff misstates what constitutes proof of the existence of the agreement. He claims that "[t]he dispositive objection is whether the display Experian itself submits satisfies the legal notice requirement." Dkt. 54, III.A. But that is not the only evidence Experian provided. Experian also provided the Smith Declaration. Dkt. 52-1. Dan Smith attests, under penalty of perjury and based on his own personal knowledge, when Plaintiff enrolled in CreditWorks and how he would have enrolled, including what he would have seen on his screen when enrolling and the steps he would have taken to enroll. *Id.* ¶¶ 6-10. He attests to the accuracy of the webform that Plaintiff completed, to the Terms of Use Agreement in effect when Plaintiff enrolled, and the Terms of Use Agreement in effect at the time Plaintiff filed his lawsuit. The Declaration, based on personal knowledge and supported by documentation, is sufficient to establish that a valid Arbitration Agreement was formed, as "[c]ourts in this circuit have generally found." *Stone*, 826 F. Supp. 3d at 1279-80*; see Acorin*, 2024 WL 5011950 at *4-5; *Scribner*, 738 F. Supp. 3d at 1305-

06. As Plaintiff fails to demonstrate any meaningful factual issue, the Court should grant Experian's Motion to Compel Arbitration.

**III. Experian May Enforce the Agreement Directly as a Defined Party**

Parties, like Experian, who "are defined as 'affiliates' in an arbitration agreement may enforce the agreement as a party." *Driskill*, 753 F. Supp. 3d at 847 (citing *Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 F. App'x 472, 475 (9th Cir. 2018)); *Bryant*, 763 F. Supp. 3d at 951; *Stone*, 826 F. Supp. 3d at 1280-81; *Davis*, 2025 WL 2998157, at *2; *Kercher*, 2024 WL 6888663, at *3. The December 2023 Terms of Use define "ECS" to include its "affiliates (including, but not limited to, Experian Information Solutions, Inc.)," and the Arbitration Agreement incorporates that definition. Dkt. 52-3, pp. 2, 8. Plaintiff's reference to *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631 (9th Cir. 2021) does not help him. In *Ahlstrom*, the nonsignatory could not enforce the agreement as a party because the agreement did not define the contracting party to include it. *Id.* at 636 & n.4. Here, by contrast, the agreement expressly names Experian, as Plaintiff acknowledges. Dkt. 54, V.A. Experian may enforce the terms of the Arbitration Agreement, and the Court should therefore grant its Motion to Compel Arbitration.

**IV. No Discovery or Trial under 9 U.S.C. § 4 is Needed**

As outlined above, Plaintiff's challenge to contract formation fails as a matter of law. Therefore, no discovery or trial under 9 U.S.C. § 4 is needed or warranted. Plaintiff agrees that he signed up for a CreditWorks account on May 7, 2024. Dkt. 54, III.A. He "does not now recall" the sign-up process and concedes that this lack of recollection "does not, standing alone, establish a genuine factual dispute." *Id.* Those facts do not support a basis for granting discovery to determine whether there exists a valid arbitration agreement, and without a genuine dispute of material fact there is nothing to try under Section 4. *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824 (9th Cir. 2022), on which Plaintiff relies in support of his position, is inapt. In *Knapke*, the defendant moved to compel arbitration against a plaintiff who <u>did not</u>

have an account with it. *Id.* at 829. The motion was based on a series of arguments asserting either that plaintiff's attorney was authorized to agree to defendant's arbitration terms on the plaintiff's behalf, or that plaintiff had otherwise bound herself to the terms. *Id.* at 833-36. Here, there is no dispute that Plaintiff signed up for CreditWorks. There is no question of agency, either. Plaintiff's argument consists of questioning the layout of the registration screen as provided—a legal question the Court can resolve on the existing record. Dkt. 52-2. Plaintiff does not assert that the records he seeks would contradict Mr. Smith's testimony. Dkt. 54, III.D. Experian has demonstrated the existence of a valid Arbitration Agreement. Discovery is not warranted, and the Court should grant Experian's Motion to Compel Arbitration without it.

**V. The Arbitrator Decides Scope and Enforceability**

Once the Court establishes there is a valid arbitration agreement, the Court looks to the contract to see whether the parties agreed "that an arbitrator, rather than a court, will resolve threshold arbitrability questions." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). Where there is "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability, therefore, the Court's normal gatekeeping duties are delegated to the arbitrator. *Rendon v. T-Mobile USA, Inc.*, 747 F. Supp. 3d 1314, 1317-18 (C.D. Cal. 2024); *Henry Schein*, 586 U.S. at 67-68. The December 2023 Terms of Use provide that "[a]ll issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding arbitrability, (ii) the scope and enforceability of this arbitration provision," and that the arbitrator "possesses . . . exclusive authority to resolve" those disputes. Dkt. 52-3, pp. 9-10. Because there is a valid arbitration agreement here, it is for the arbitrator to decide whether Plaintiff's allegations fall under the agreement's broad scope. Plaintiff himself acknowledges that "the arbitration text expressly includes FCRA claims and credit information" and that his scope argument "cannot override a valid delegation." Dkt. 54, V.C.

**VI. The Court Does Not Need to Reach a Decision on Whether the November 2025 Updated Terms of Use Bind Plaintiff**

Plaintiff concedes that a lack of proof of the November 2025 revision "alone does not defeat the motion if the original agreement was formed and independently supports the requested relief." Dkt. 54, IV. Experian and Plaintiff both agree that the December 2023 Terms of Use and the November 2025 Terms of Use similarly contain arbitration provisions, expressly include Experian as a party, and delegate the issue of arbitrability to the arbitrator. *Id.* Given that Experian has demonstrated that Plaintiff entered into a binding Arbitration Agreement in 2024, the Court need not decide on the November 2025 updated Terms of Use and should delegate that to the arbitrator, under the binding Arbitration Agreement in the December 2023 Terms of Use in effect when Plaintiff enrolled on May 7, 2024. *See, e.g., Hirsh*, 2025 WL 3155936, at *3 n.6; *Davis*, 2025 WL 2998157, at *2 n.1.

**VII. Experian Has Not Waived Arbitration**

Experian has not waived arbitration under *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). Experian raised arbitrability as its Second Affirmative Defense in Experian's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint. Dkt. 46, pp. 10-11. Approximately three weeks later, Experian met and conferred with Plaintiff about Experian's intention to move to compel arbitration. Dkt. 52-5, Scott Decl. ¶¶ 3-4. It then filed its Motion to Compel Arbitration within six weeks of its Answer. Dkt. 52. As in *Armstrong*, once Experian knew it could move to compel arbitration, it did so. *Armstrong*, 59 F.4th at 1015. Plaintiff has failed to establish that Experian "acted inconsistently with exercising its right to arbitrate." *Id.* at 1016. Additionally, the parties delegated to the arbitrator the question of "whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate." Dkt. 52-3, pp. 9-10. The Court should therefore grant Experian's Motion to Compel Arbitration and to Stay.

**VIII. The Court Should Stay the Claims Against Experian and, In Its Discretion, the Entire Action**

Plaintiff agrees with Experian that a stay of Plaintiff's claims against Experian is mandatory under 9 U.S.C. § 3 and *Smith v. Spizzirri*, 601 U.S. 472, 477-78 (2024). Dkt. 52, IV; Dkt. 54, VII, VIII. Additionally, an action-wide stay is warranted. *Bryant*, 763 F. Supp. 3d at 952; *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979); Lockyer v. Mirant Corp., 398 F.3d 1098, 1111-12 (9th Cir. 2005) (reversing a stay where the parallel proceeding was unlikely to resolve the stayed claims, but recognizing that a district court may, in its discretion, stay an entire action pending resolution of another proceeding involving overlapping facts and claims).

Counts I and II of Plaintiff's First Amended Complaint allege the same accounts and damages against all three credit reporting agencies and Count III against the furnishers rests on the same disputed accounts. Dkt. 21, pp. 6-7. Plaintiff concedes that the accounts and damages overlap, as well. Dkt. 54, VII. Although Plaintiff notes that each defendant's reporting and investigation conduct is separately alleged, *id.*, each claim turns on whether the same accounts were inaccurately reported and on the same alleged emotional-distress, leave, and lost-wage damages, so the arbitration will likely resolve factual questions overlapping with those in the remaining claims. *Bryant*, 763 F. Supp. 3d at 952; *Miles*, 2026 WL 331800, at *1. Regarding timing and the possible hardship to Plaintiff, the Arbitration Agreement provides that Experian pays the fees unless the claim is found frivolous, that the more informal AAA Rules govern discovery and procedure, and that the consumer may elect to have the matter decided on the documents for claims of $10,000 or less. Dkt. 52-3, pp. 8-10.

**IX. Conclusion**

For the foregoing reasons, and those in its initial Motion, Experian requests that the Court compel arbitration before the AAA under the December 2023 Terms

of Use; deny the alternative requests for discovery or for trial under 9 U.S.C. § 4; stay the claims against Experian; and stay the entire action during the pendency of the arbitration proceedings.

Dated: November 23, 2026

VENABLE LLP

By: /s/ *Shannon E. Beamer*
Shannon E. Beamer

*Attorneys for Defendant*
Experian Information Solutions, Inc.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1

The undersigned counsel of record for Defendant Experian Information Solutions, Inc. certifies that this brief contains 3,187 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 23, 2026 VENABLE LLP

By: /s/ *Shannon E. Beamer*
Shannon E. Beamer

*Attorneys for Defendant*
Experian Information Solutions, Inc.

## PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Venable LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067.

On **November 23, 2026**, I served a copy ☑ / original ☐ of the foregoing document(s) described as **DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS** on the interested parties in this action addressed as follows:

James D. Orr *PRO SE Plaintiff*
4880 Ariano Drive
Cypress, CA 90630
Telephone: 406-890-1929
Email: *JDJames.Orr@gmail.com*

☑ By placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above.

☑ **BY MAIL (FRCP 5(b)(2)(C)):** I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice such envelope(s) is deposited with the U.S. Postal Service on the same day this declaration was executed, with postage thereon fully prepaid at 2049 Century Park East, Suite 3400, Los Angeles, California, in the ordinary course of business.

☑ **BY ELECTRONIC MEANS (FRCP 5(b)(2)(E)):** Pursuant to FRCP 5(b)(2)(E), I served the above-stated document by electronic means to the interested parties in this action whose names and e-mail addresses are listed above. I did not receive, within a

reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. Service by e-mail or electronic means was agreed upon based on an agreement of the parties to accept service.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on **November 23, 2026**, at Los Angeles, California.

Jessica B. Jaramillo

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900